JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
LOS ANGELES DIVISION

| IN RE: EAST COAST FOODS, INC. | CASE NO. CV 18-10098 MWF |
|---|---|
| | ORDER RE: THE BANKRUPTCY COURT'S ORDER |

Before the Court is an appeal from the United States Bankruptcy Court (the Honorable Sheri L. Bluebond, United States Bankruptcy Judge). Appellant Clifton Capital Group, LLC ("Clifton Capital") appeals from the Bankruptcy Court's Order granting the Trustee's Fourth and Final Application for Compensation and Reimbursement of Fees and Expenses (the "Final Fee Application") in the amount of $1,155,944.71. The Order was issued on November 19, 2018.

Clifton Capital submitted its Opening Brief ("OB") on March 6, 2019. (Docket No. 11). On May 22, 2019, Appellee Bradley D. Sharp, Chapter 11 Trustee, submitted his Brief ("AB"). (Docket No. 16). On July 1, 2019, Appellant submitted its Reply Brief ("RB"). (Docket No. 23). The Court has read and considered the papers filed in this appeal, and held a hearing on November 6, 2019.

The Order is **AFFIRMED *in part*, REVERSED *in part*, and REMANDED** for further proceedings. The Bankruptcy Court did not make the required findings to determine that the Trustee is entitled to a fee award that exceeds the lodestar figure. However, the Bankruptcy Court did not abuse its discretion in awarding compensation for services performed by Development Specialists, Inc. ("DSI").

# I. BACKGROUND

On March 25, 2016, East Coast Foods, Inc. (the "Debtor") filed for bankruptcy under Chapter 11. (Appellant's Excerpts of Record ("ER") 60 (Docket No. 11)). On April 29, 2016, the Office of United States Trustee (the "U.S. Trustee") appointed the Official Committee of Unsecured Creditors (the "Committee"). (ER 84). Clifton Capital is a member of the Committee. (*Id.*).

On September 28, 2016, the Bankruptcy Court appointed Bradley D. Sharp as the Chapter 11 Trustee (the "Trustee"). (ER 90). The Trustee handled numerous issues during his appointment, including state court actions, tax disputes, landlord disputes, accounting practices, and return of intellectual property assets. (ER 967-70; AB 10-14). The Trustee employed his company, DSI, to help him perform some of his duties as the Trustee. (ER 102, 258, 331, 879).

On July 3, 2018, the Bankruptcy Court entered an order confirming a joint Plan of Reorganization (the "Plan"). (ER 715-26). On September 10, 2018, the court granted non-material modifications to the Plan, and on September 14, 2018, the Plan became effective. (ER 715-34).

The Trustee filed four fee applications during the bankruptcy case. In the first three applications, the Trustee sought approval of fees and costs on an interim basis. (ER 102 *et seq.*, ER 258 *et seq.*, ER 331 *et seq.*). In the fourth and final application, the Trustee sought final approval of his fees and costs. (ER 879 *et seq.*).

In each Fee Application, the Trustee sought fees incurred by himself as well as by DSI personnel. Specifically, each Application contained the disclosure: "This

Application includes the time records for employees of [DSI] . . . who assisted the trustee in the performance of his duties of this case." (ER 102, 258, 331, 879).

The Committee filed an objection to the First Fee Application, arguing that the court never authorized DSI's employment, and therefore, fees to DSI totaling $202,767.59 should be disallowed. (ER 189). The Bankruptcy Court overruled the Committee's objection and approved the First Fee Application in full. (SER 41). The Committee did not object to DSI's fees in the second and third applications, and the Bankruptcy Court approved both Fee Applications in full. (SER 43-44; ER 52-53; AB 20).

The Trustee filed the Final Fee Application in October 2018. The Final Fee Application disclosed that the Trustee and his staff at DSI had worked 1,692.2 hours during the case, which would equate to $758,955.50 if billed at normal hourly rates. (ER 885). However, the Trustee requested a fee of $1,155,844.71, which is the maximum fee permitted under 11 U.S.C. § 326(a) ("§ 326(a)"). (*Id.*).

Clifton Capital filed an objection to the Final Fee Application. (ER 936 *et seq.*). It did not object to the Trustee's request for fees associated with work performed by his staff at DSI. However, Clifton Capital argued that the Trustee should not be paid the maximum amount under § 326(a), which is a limit and not a presumption of reasonableness. (ER 942-44). Clifton Capital argued that the Trustee had the burden of establishing his requested compensation was reasonable under 11 U.S.C. § 330(a) ("§ 330(a)"), and that the proper way to establish reasonable compensation is by applying the lodestar method. (*Id.*).

The Bankruptcy Court granted the Trustee's Final Fee Application and entered an order granting the Final Fee Application (the "Final Fee Order"). (ER 58). The court provided two alternative grounds for granting the Fee Application. First, the court determined that the requested fee was reasonable because it equaled the amount set forth under § 326(a). The court explained: "Congress has really tried to be pretty clear that trustee compensation, it's really more in the nature of a

commission" and "it takes some pretty extraordinary circumstances for me to revisit the Trustee compensation that's provided by formula" under § 326(a). (ER 47).

The court then provided an alternative basis for its decision: "[I]n the alternative – aside from my discussion of how I read the compensation formula for trustees, in the alternative, even if I look at it simply as reasonable compensation, I think this was an exceptional case." (ER 51). The court noted that "[t]his case was a mess," and "there were a number of problems with the way Mr. Hudson had run the business, resulting in multi-million dollar judgments and tax claims." (*Id.*). Because the Trustee ran the Debtor's business in a professional manner, "had an awful lot of cleanup to do and an awful lot of challenges facing him in doing that," the court held that the compensation the Trustee was seeking as "reasonable for the circumstances, under the circumstances and for the results achieved." (ER 52).

Appellant filed the instant appeal of the Final Fee Order.

## II. STANDARD OF REVIEW

A bankruptcy court's conclusions of law are reviewed de novo and findings of fact are reviewed for clear error. *Zurich Am. Ins. Co. v. Int'l Fibercom, Inc.*, 503 F.3d 933, 940 (9th Cir. 2007). Pertinent to this appeal, the bankruptcy court's award of professional fees "will not [be] disturb[ed] … unless the bankruptcy court abused its discretion or erroneously applied the law." *In re Strand*, 375 F.3d 854, 857 (9th Cir. 2004). "A bankruptcy court abuses its discretion if it applies the wrong legal standard or its findings are illogical, implausible or without support in the record." *In re Cook Inlet Energy LLC*, 583 B.R. 494, 500 (B.A.P. 9th Cir. 2018).

## III. DISCUSSION

### A. Standing

"In order to have standing to appeal, a party must be directly and adversely affected pecuniarily by the bankruptcy court decision." *In re 240 N. Brand Partners, Ltd.*, 200 B.R. 653, 657 (B.A.P. 9th Cir. 1996). The Trustee argues that Clifton Capital is not an "aggrieved person" because it "is guaranteed to be paid

100% of its alleged claim" under the Plan. (AB at 6). In support of this claim, the Trustee points to a declaration made by Clifton Capital's principal, who testified that the Plan "ensure[s] 100% payment to creditors." (AB at 6; SER 63).

In response, Clifton Capital argues that it is aggrieved because "[t]here are not yet enough funds on hand to pay all creditors, including Clifton Capital, in full, and there are outstanding contingencies under the Plan that must occur before those funds become available." (RB at 3). In fact, Clifton Capital notes that it "has not been paid any amount on its allowed claim." (*Id.*). At the hearing, Clifton Capital confirmed that there are not sufficient funds to pay back all the creditors. Clifton Capital further argues that "[a]llowing the Trustee to receive and retain compensation beyond which he is entitled subordinates Clifton Capital's claim more than it should be." (RB at 4).

Although neither party provides case law directly on point on the issue, the Court finds Clifton Capital's argument to be more persuasive. Clifton Capital's claim is "subordinated to . . . all allowed and secured and unsecured claims and approved administrative expenses." (SER 46; AB at 15-16). This is important because to date, there is not sufficient capital to pay all creditors. Because the increased compensation to the Trustee will further subordinate Clifton Capital's claim, the Court concludes that Clifton Capital is directly and adversely affected by the Final Fee Order, giving it standing to pursue this appeal. *See Salomon v. Logan (In re International Envtl. Dynamics, Inc.)*, 718 F.2d 322, 326 (9th Cir.1983) ("[I]n a case involving competing claims to a limited fund, a claimant has standing to appeal an order disposing of assets from which the claimant seeks to be paid."); *In re P.R.T.C., Inc.*, 177 F.3d 774, 778 (9th Cir. 1999) ("A creditor does . . . have a direct pecuniary interest in a bankruptcy court's order transferring assets of the estate.").

The Court thus turns to the merits.

### B. The Fee Order

Clifton Capital argues that the Fee Order was an abuse of discretion for two reasons. First, Clifton Capital argues that the Bankruptcy Court erred in determining that the Trustee's requested fees were reasonable. Second, Clifton Capital argues that the Bankruptcy Court erred in awarding the Trustee compensation for services performed by DSI. The Court agrees with Clifton Capital that the Bankruptcy Court erred in determining that the Trustee's requested fees were reasonable because the court did not make detailed findings as to why the Trustee is entitled to an amount significantly higher than the lodestar figure. However, the Court concludes that the Bankruptcy Court did not abuse its discretion in awarding the Trustee compensation for services performed by DSI.

#### 1. Reasonableness of the Trustee's Fee

Clifton Capital argues that the Bankruptcy Court committed two errors when it determined the reasonableness of the Trustee's fee.

***The Wrong Legal Standard:*** Clifton Capital first argues that the Bankruptcy Court applied the wrong legal standard. (OB at 12-19). According to Clifton Capital, the Bankruptcy Court concluded that the Trustee's requested fee was reasonable because it equaled the amount provided under § 326(a). (OB at 12-13). But § 326(a) sets a statutory cap for trustee compensation, not what is presumptively reasonable compensation. Therefore, Clifton Capital argues that the Bankruptcy Court should have considered "all relevant factors" listed under § 330(a) to determine whether the Trustee's requested compensation was reasonable. (OB at 15-16). In response, the Trustee argues that the Bankruptcy Court did precisely that; it provided an alternative ground for finding the requested fee to be reasonable under all relevant factors as stated in § 330(a). (AB at 27-28).

The Court does not find Clifton Capital's argument to be persuasive. The Bankruptcy Court provided two separate bases for determining the reasonableness of the Trustee's requested fees. The Bankruptcy Court first determined that the

requested fee was reasonable because the fee should be treated as a "commission" that is equal to the § 326(a) statutory cap. (*See* ER 47-48). If this was the only basis for the Bankruptcy Court's determination, Clifton Capital's argument would have merit.

However, the Bankruptcy Court also provided an alternative basis for its decision. The Bankruptcy Court stated: "in the alternative, even if I look at it simply as reasonable compensation, I think this was an exceptional case." (ER 51). The Bankruptcy Court then explained the challenges the Trustee faced in this case and concluded that "the compensation that [the Trustee] is requesting here in accordance with the formula is reasonable for the circumstances, under the circumstances and for the results achieved." (ER 52). Even Clifton Capital appears to acknowledge that this is the correct legal standard for determining the reasonableness of the Trustee's fees. Therefore, the Court determines that the Bankruptcy Court did not err by applying the wrong legal standard.

***Exceeding the lodestar figure:*** Even if the Bankruptcy Court articulated the correct legal standard, Clifton Capital further argues that the court erred by awarding a fee amount that far exceeded the lodestar figure without providing sufficient reasoning for the deviation. (RB at 15-19). Both parties appear to agree that the Bankruptcy Court was not required to apply the lodestar. (*See* RB at 11). Nonetheless, Clifton Capital argues that lodestar approach is the "primary method" for determining reasonableness of the Trustee's compensation and argues that the court should not have granted the Trustee an award beyond the lodestar amount without "specific evidence that an award based on his standard hourly rate and actual hours worked does not fairly compensate for the work done." (OB at 28).

In response, the Trustee argues that the Bankruptcy Court has provided sufficient reasoning for why this case was exceptional. The Trustee notes that the Bankruptcy Court explained that "there were a number of problems with the way Mr. Hudson had run the business, resulting in multi-million dollar judgments and

7

tax claims," "[t]here were other labor problems," and "it was apparent to this Court that [the Debtor] did not know how to run a business with multiple locations in a professional manner." (ER 51-52). The Bankruptcy Court also observed that the Trustee came in and ran the business and "had an awful lot of cleanup to do and an awful lot of challenges facing him in doing that." (ER 52). According to the Trustee, this record demonstrates that the Bankruptcy Court considered the circumstances of this case and appropriately determined a reasonable amount of fees.

The Court agrees with Clifton Capital. In *In re Manoa Finance Co., Inc.*, the Ninth Circuit explained that "[t]here is a strong presumption that [an award based on the lodestar] was 'reasonable compensation.'" 853 F.2d 687, 692 (9th Cir. 1988). Therefore, "[i]n order to justify a bonus [beyond the lodestar figure], appellant must come forward with specific evidence showing why the results obtained were not reflected in either his standard hourly rate or the number of hours allowed. He must also show that the bonus is necessary to make the award commensurate with compensation for comparable nonbankruptcy services." *Id.* Moreover, [i]f the bankruptcy court determines that a bonus is justified, it must make ***detailed findings*** in support of that determination." *Id.* (emphasis added).

Here, the parties dispute what the correct lodestar amount is. However, after correcting for a typographical error in the Final Fee Application, it appears that the lodestar amount would have been $758,977.50. (AB at 22; RB at 16, n.10). It is undisputed that the Bankruptcy Court awarded $1,155,844.70. Therefore, the Bankruptcy Court appears to have determined that a significant enhancement or bonus to the lodestar figure was appropriate. However, the Court cannot identify any detailed findings in support of this determination in the record. Moreover, while the Bankruptcy Court observed that the Trustee faced various challenges in this action, it is not clear why such considerations would not have been encompassed in the lodestar figure, or would justify such a substantial bonus.

8

Accordingly, the Court vacates the Order granting $1,155,944.71 in fees to the Trustee. On remand, the Bankruptcy Court should either (i) definitively establish the lodestar figure and award fees accordingly, or (ii) make detailed findings to determine whether a fee award beyond the lodestar figure is warranted.

## 2. Compensation for Services Performed by DSI

Clifton Capital also argues that the Bankruptcy Court erred in awarding the Trustee compensation for services performed by DSI, which were not properly employed pursuant to 11 U.S.C. § 327. (OB at 29). Clifton Capital argues that DSI was never employed by the bankruptcy estate, but still billed and was awarded $286,998 for its services. (*Id.*). Clifton Capital argues that this award was reversible error.

As a preliminary matter, the Trustee argues that Clifton Capital's objection has been waived because it did not raise this argument in its objection to the Final Fee Application. (AB at 35). Even though the Trustee disclosed that he was seeking fees for services rendered by DSI personnel, and even though Clifton Capital recognized this fact, Clifton Capital did not object to the Final Fee Application on those grounds. (*Id.*). In fact, the Trustee asserts that Clifton Capital did the opposite by asking the Bankruptcy Court to approve the Trustee's fees in the amount of $810,661.24, which included compensation for services rendered by DSI personnel. (*Id.*)

In response, Clifton Capital argues that "there was no reason—or need—to continue to raise the issue on each subsequent fee application." (RB at 20, n.11). Clifton Capital argues that it did not need to raise this issue because the Committee had raised this exact objection in the First Fee Application, but the Bankruptcy Court overruled the objection and approved the award to DSI. (*See* SER 41).

Although Clifton Capital did not raise this objection to DSI in response to the Final Fee Application, the Court determines that the argument was sufficiently raised for the Bankruptcy Court to rule on it in the First Fee Application. *See In re*

9

*Mercury Interactive Corp.*, 618 F.3d at 922. ("Although no bright line rule exists to determine whether a matter has been properly raised below, an issue will generally be deemed waived on appeal if the argument was not raised sufficiently for the trial court to rule on it.") (internal quotation marks and citation omitted). Accordingly, the Court examines the merits.

"In bankruptcy proceedings, professionals who perform services for a debtor in possession cannot recover fees for services rendered to the estate unless those services have been previously authorized by a court order." *In re Atkins*, 69 F.3d 970, 973 (9th Cir. 1995); *see* 11 U.S.C. § 327(a) (with court approval, the trustee may employ "professional persons" who do not hold an adverse interest to the estate). "The bankruptcy courts in this circuit possess the equitable power to approve retroactively a professional's valuable but unauthorized services," but "such retroactive approval should be limited to situations in which 'exceptional circumstances' exist." *In re Atkins*, 69 F.3d at 973-74. "To establish the presence of exceptional circumstances, professionals seeking retroactive approval must satisfy two requirements: they must (1) satisfactorily explain their failure to receive prior judicial approval; and (2) demonstrate that their services benefitted the bankrupt estate in a significant manner." *Id.* at 974.

Here, it is undisputed the Trustee never filed an employment application under § 327 for DSI. Nonetheless, the Trustee argues that it was not required to employ DSI under § 327 because there is no prohibition on a trustee utilizing the services of his or her staff to assist him or her in performing administrative tasks. (AB at 35-36). The Trustee further notes that Clifton Capital did not show that any of the services provided by DSI personnel did not constitute trustee services. (*Id.* at 37-38). Finally, the Trustee argues that even if he should have formally sought to employ DSI, his failure to do so was harmless because there can be no question that the Bankruptcy Court would retroactively authorize DSI's employment. (*Id.* at 38).

In response, Clifton Capital argues that DSI should still have been employed under § 327 because under the plain language of the statute, a professional cannot be paid by the bankruptcy estate unless the services rendered were previously approved by court order. (RB at 20). Clifton Capital further argues that DSI personnel are professionals.

The critical issue appears to be whether DSI personnel should be considered a "professional" within the meaning of § 327(a). Neither party has provided a clear definition of the term, and there appears to be limited case law on the issue. However, the Court notes that "[n]ot every person employed by a trustee is a 'professional person' within the meaning of § 327." *In re Blair*, 329 B.R. 358 (B.A.P. 9th Cir. 2005). "A 'professional person' is one who takes a central role in the administration of the bankruptcy estate and in the bankruptcy proceedings[.]" *Id.* (internal quotation marks and citation omitted). "Individuals or entities that perform mechanical, nondiscretionary tasks are not 'professional persons' within the meaning of § 327." *Id.*; *see also In re Fretheim*, 102 B.R. 298, 299 (Bankr. D. Conn. 1989) (To qualify as a professional under § 327(a), "it must be determined whether an employee is to be given discretion or autonomy in some part of the administration of the debtor's estate.").

Here, the Trustee detailed the services that DSI personnel provided to assist him, and the Bankruptcy Court determined that these services should be included as part of trustee services and should be paid as part of the trustee fees. (SER 41). Therefore, it appears that the Bankruptcy Court implicitly determined that DSI personnel are not professionals that must be employed under § 327. The Court determines that this finding was neither illogical nor implausible. It appears that the DSI personnel assisted the Trustee by performing mostly administrative tasks, including implementing new cash controls, a point of sale system, and improved financial reporting. (ER 113-114). Even Clifton Capital does not appear to dispute that the nature of the services conducted by DSI personnel were administrative.

| | |
|---|---|
| 1 | While Clifton Capital emphasizes that the DSI personnel's hourly rates are higher |
| 2 | than what one would expect from lower-hourly rate staff, the Court does not find |
| 3 | this fact to be determinative. |
| 4 |     Accordingly, the Bankruptcy Court did not abuse its discretion in awarding |
| 5 | the Trustee compensation for services performed by DSI. |

## IV. CONCLUSION

The Final Fee Order is **AFFIRMED *in part*, REVERSED *in part***, and **REMANDED** for further proceedings consistent with this Order.  Specifically, the Bankruptcy Court in its discretion may either enter an order awarding fees consistent with the lodestar figure (which may be recalculated) or make detailed findings sufficient to justify a higher amount.

IT IS SO ORDERED.

DATED: December 18, 2019.

MICHAEL W. FITZGERALD
United States District Judge

CC: Bankruptcy Court